### KLEMPNER v. GLENN.
No. 1246.

United States District Court
W. D. Kentucky.
Feb. 2, 1949.

Franklin P. Hays and Skaggs, Hays & Fahey, all of Louisville, Ky., for plaintiff.

Sewell Key, Andrew D. Sharpe and Maurice P. Wolk, Assts. to Atty. Gen., and David C. Walls, U. S. Atty., and A. Roy Copeland, Asst. U. S. Atty., both of Louisville, Ky., for defendant.

SHELLBOURNE, Chief Judge.

The Court makes the following findings of fact and conclusions of law in this action:

### Findings of Fact.

1. The plaintiff, herein sometimes referred to as the "taxpayer," now is and at all times material to this action was a resident of Louisville, Jefferson County, Kentucky.

2. The defendant now is and at all times material to this action has been the duly qualified and acting Collector of Internal Revenue for the District of Kentucky.

3. This action is one for the recovery of internal revenue taxes.

4. The plaintiff, during all of the calendar years 1942 and through August 31, 1943, was in partnership with his brother, Emil Klempner, under the firm name of Klempner Bros. and devoted his full time to said business. Such partnership was engaged in the junk business. It kept its books and made its income tax returns upon a fiscal year basis ending each year on August 31.

5. The plaintiff, about November, 1941, made an application to the Commissioner of Internal Revenue for permission to change the basis of filing his income tax returns from a calendar year to a fiscal year basis, but it does not appear from the evidence or the record that such application was ever passed upon, that such approval was ever given or that the taxpayer was ever notified as to any action taken by the Commissioner. The allegations of the Amendment to Answer filed by the defendant were automatically denied under the Federal rules of practice without any reply being filed by the plaintiff and no proof was introduced by the defendant as to this matter.

6. During the years 1942 and 1943, the plaintiff did not make any record or records of transactions resulting in the receipt of income or any items being deductible for purposes of his Federal income tax liability. He did retain some receipts executed by other persons showing the payment by the plaintiff of certain amounts for such purposes as charities, repairs and expenses in connection with his automobile, legal fees and taxes. At the time of the trial the taxpayer did not have a receipt book issued by the Royal Industrial Bank showing amounts of interest paid to such bank, but at the time such payments were made to the Royal Industrial Bank such bank gave to the taxpayer a cardboard folded over on which were indicated by the bank the amounts of payments as made to it.

7. The books of the partnership as partnership records showed the amount of income from the partnership due for each of such years to the plaintiff.

8. In two instances the taxpayer, because of his illness, requested the bookkeeper of the partnership as a personal favor to him to pay a nurse the sum of $6

and the Wilcox Motor Company the sum of $40 with cash turned over by the taxpayer to such bookkeeper. The taxpayer did not know how the bookkeeper would handle the transaction, and such payments were not made to the bookkeeper with any intention or desire that any record of the transaction should be made on the partnership books. It would have been possible for the bookkeeper to have carried out the instructions of the taxpayer by sending cash or her own personal check to the creditors of the taxpayer to be paid. As a matter of fact, the cash paid to the bookkeeper by the taxpayer was deposited in the firm account, and the firm paid such creditors. The bookkeeper as a partnership record entered the receipt of such cash and the amount of such payments in the ledger on the page headed "Harry W. Klempner—Drawing Account." The taxpayer did not know that such payments were handled in this manner.

Without any request from the taxpayer, the bookkeeper for the partnership made payments of Kentucky income taxes owing by the taxpayer and entered such payments in the books of the partnership. The taxpayer did not know such entry had been made.

9. No bank account was kept by the taxpayer at any time material to this case.

10. As to the only income other than partnership income and as to 26 deductions out of a total of 30 deductions taken on the 1942 and 1943 income tax returns there was no written record made by anyone at all in any books and only 4 of the total of such deductions appeared on the books of the partnership. There were 15 deductions each year and 2 of same each year appeared on the books of the partnership as partnership records. One of such 2 deductions each year was a part of charitable contributions made by the partnership allowable to the taxpayer and required by law to be kept in the partnership books. The other deduction each year was the Kentucky income taxes of the taxpayer hereinbefore referred to.

11. No item of income and no deduction appearing on the taxpayer's 1942 Federal income tax return appeared on the books of the partnership prior to September 1, 1942, other than charitable contributions made by the partnership, a part of which was deductible on the taxpayer's individual return.

12. No regular or other books of account were kept by the taxpayer at any time material to this case. The books of the partnership were not the books of the taxpayer as an individual. The bookkeeper for the partnership was never requested to keep any books for the taxpayer and was not his agent to keep any books for him as an individual.

13. No application was made by the taxpayer to change the basis of filing his income tax return from a calendar year basis to a fiscal year basis for the year ending August 31, 1943.

14. The taxpayer, on or about November 15, 1942, filed in the office of the defendant Collector of Internal Revenue an income tax return for himself disclosing an income tax liability of $19,004.32, which sum was paid by him to the Collector on or before the date or dates on which interest or penalties would accrue and the Collector, as required by law, transmitted same to the Treasury of the United States.

15. Thereafter the Commissioner of Internal Revenue caused an audit to be made of the return of the taxpayer and determined that the taxpayer was on a fiscal year basis and that an income tax return should be made for the period from January 31, 1942, instead of for the calendar year of 1942.

16. An amended income tax return dated November 20, 1944, was filed on a cash basis by the taxpayer for the calendar year 1942 showing the correct computation of the tax to be $23,128.85.

17. During the calendar year of 1942 the taxpayer received no income other than $47,234.77, which he received from the partnership of Klempner Bros. During the same year the taxpayer made charitable contributions amounting to $355.65, consisting of $233.65 made through the partnership of Klempner Bros. and $122 to Congregation Anshei Sfard, expended $49.29 for interest to the Royal Industrial Bank, paid taxes of $456.68, consisting of $416.44 Kentucky income taxes, $4.64 state of Ken-

tucky and Jefferson County taxes, $10.01 city of Louisville taxes, $5 amusement taxes, $5 automobile license, $7.09 automobile use tax, $1 for automobile driver's license and $7.50 for gasoline taxes, expended $11 for automobile insurance, had $328.86 depreciation of his automobile and paid or lost $96 for miscellaneous items, consisting of $66 for legal fees for business purposes and a $30 loss by theft. He used his automobile as to which such expenses and depreciation were incurred 60% in his business and 40% for pleasure. The taxpayer was single during all of the year 1942.

18. On or about June 29, 1945, the taxpayer paid to the defendant an alleged income tax deficiency in the amount of $4,714.55 for the year 1942, less an overassessment of $32.65 for 1941, or an alleged net deficiency of $4,681.90. On September 5, 1945, he paid interest in full from March 15, 1943, in the amount of $620.64 on the alleged deficiency to the defendant, who transmitted both of said payments to the Treasury of the United States. Both of said payments were made with the right to claim a refund of said tax, and if such refund should be disallowed to institute legal proceedings in a court of competent jurisdiction for the recovery of said tax and interest.

19. A claim for refund with respect to the calendar year 1942, properly executed and verified, was filed by the taxpayer with the defendant on or about February 18, 1946, for the sum of $557.37 plus interest at 6% per annum from March 15, 1943, to the date of payment.

20. The taxpayer filed a Federal income tax return on or about November 21, 1943, showing a total gross income of $32,935.69, all of which came from the partnership of Klempner Bros., and a tax liability of $13,623.13 which he paid at that time.

21. During the calendar year 1943 the taxpayer received $32,935.69 from the partnership of Klempner Bros., $1,700 salary from his brother, Emil Klempner, and $50 gained from pari-mutuel betting.

During the same year he made charitable contributions of $509.37, consisting of $354.37 made through the partnership of Klempner Bros., $10 to Congregation Adath Jeshurun and $145 to Congregation Anshei Sfard, paid $1,164.40 in taxes, consisting of $5 for automobile license, $1 for a driver's license, $5 for Federal automobile use tax, $7.50 for gasoline taxes, $5 for amusement taxes, $1,098.27 for Kentucky income taxes, $13.20 for state and county taxes, $28.51 for city of Louisville taxes and 92 cents for Indiana tax on hotel bills, expended $150.15 for automobile repairs and $10 for automobile insurance and had $231.60 depreciation on his automobile. He used his automobile as to which such expenses and depreciation were incurred 60% in his business.

The taxpayer was single during 1943 until August 4 of that year and was a married man during the remainder of such year.

22. An amended return on a cash basis was filed by the taxpayer for the calendar year 1943 on or about November 20, 1943, which showed as the correct Federal income and victory tax liability the sum of $26,927.86.

23. The taxpayer paid a total of $36,751.98 with respect to his income and victory tax liability for the calendar year 1943, consisting of the respective amounts of $23,128.85 and $13,623.13, with respect to the calendar years 1942 and 1943, plus interest at 6% from March 15, 1944, as to any amounts not paid on or before that date, all of which payments were transmitted by the defendant to the Treasurer of the United States.

24. A claim for refund with respect to the calendar year 1943, properly executed, was filed with the defendant by the taxpayer on or about February 18, 1946, for the sum of $9,824.12 plus interest at 6% per annum from March 15, 1944, until the date of payment.

25. More than 6 months, but not more than 2 years, had passed since each of said claims for refund was filed before the present suit was filed.

26. The taxpayer is not indebted to the defendant or to the United States of America for any income or internal rev-

enue taxes arising from transactions other than those involved in the present proceeding.

### Conclusions of Law

1. The taxpayer did not have an annual accounting period or keep books during either 1942 or 1943 or at any time material to this action within the meaning of Section 41 of the Internal Revenue Code, 26 U.S.C.A. § 41.

2. The books of the partnership of Klempner Bros. were not books of the taxpayer for income tax purposes.

3. The few informal records retained by the plaintiff as to some of his items of deductions did not constitute "books" within the meaning of that term as used by Section 41 of the Internal Revenue Code.

4. The Commissioner of Internal Revenue did not at any time approve a change from a calendar year to a fiscal year basis for the filing of tax returns by the taxpayer and did not at any time notify him that such a change had been approved.

5. The taxpayer is not estopped to deny that he had an annual accounting period or that he kept books. If no regular books of account are kept the calendar year must be used as a basis of reporting income, regardless of whether or not any approval for a change to a fiscal year basis has been given by the Commissioner of Internal Revenue. Such Commissioner could not, if he would, authorize violation of the statutory provision that if a taxpayer does not keep books the net income shall be computed on the basis of a calendar year.

6. The Commissioner of Internal Revenue did not rely on and did not suffer any damage from any change of the taxpayer from a calendar year to a fiscal year basis.

7. This court has jurisdiction of the parties to and the subject matter of this action. Title 28 U.S.C.A. §§ 1340, 1346, the United States Judicial Code, and Section 3772 of the Internal Revenue Code, 26 U.S. C.A. § 3772.

8. The correct tax liability for the taxpayer for the calendar year 1942 was $23,128.85. The taxpayer made an overpayment as of March 15, 1943, of $557.37 for such year.

9. For the calendar year 1943 the correct income tax income was $32,776.87 and the correct victory tax net income was $34,450.64. The correct income and victory tax liability for said year was $26,927.86. The taxpayer made an over-payment as of March 15, 1944, of $9,824.12, for that year.

10. The taxpayer is entitled to the benefit of the forgiveness provisions contained in Section 6 of the Current Tax Payment Act of 1943, 26 U.S.C.A. § 1622 note, on the basis of returns being filed on a calendar year basis.

11. The defendant erroneously and illegally collected from the taxpayer income taxes for the calendar year 1942 in the sum of $557.37, plus interest at 6% per annum from March 15, 1943, and income taxes and victory taxes for the calendar year 1943 in the sum of $9,824.12 on or before March 15, 1944. The taxpayer should recover in the amount prayed for in the petition, namely, $557.37, plus interest at the rate of 6% per annum from March 15, 1943, until paid, plus the further sum of $9,824.12 plus interest at the rate of 6% per annum from March 15, 1944, until paid.

12. The defendant had probable cause for the erroneous and illegal collection of all of said amounts, and when said amounts, plus interest, are recovered it should be so certified in the final judgment, in order that said amounts, plus interest, may be provided for and paid out of the proper appropriation from the Treasury of the United States in accordance with Section 989 of the United States Revised Statutes, 28 U.S.C.A. § 2006.

Counsel for the plaintiff will submit, upon notice to opposing counsel, judgment as hereby authorized.